FILED
SEP 13
CLERK, U.S. DISTRICT CO.
By _____ Deputy

ENTERED ON DOCKET
SEP 14 2000
U.S. DISTRICT CLERK'S OF

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLAN ZISHKA, et al., On Behalf of Themselves and All Others Similarly Situated, | § § § § | NO. 3:98-CV-0660-M |
| Plaintiffs, | § § | |
| v. | § § | |
| AMERICAN PAD & PAPER COMPANY, et al. | § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

This is a securities fraud case, brought as a class action for the period from July 2, 1996 through December 17, 1997, against various persons and entities associated with now bankrupt American Pad & Paper ("Ampad"). Claims are asserted under § 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), SEC Rule 10b-5, and against certain Defendants under § 20(a) of the 1934 Act. The Defendants are large shareholders of Ampad, certain of its officers and directors, the parent of its lending bank, and certain of the underwriters for Ampad's July 2, 1996 Initial Public Offering ("IPO"), who later issued favorable analyst reports on Ampad. The Defendants move to dismiss, claiming that under FED. R. CIV. P. 9(b) and (12)(b)(6), and the Private Securities Litigation Reform Act ("PSLRA"), Plaintiff's Complaint cannot withstand legal scrutiny. For the reasons

discussed below, the Court finds the Complaint deficient and thus GRANTS the Motions to Dismiss, but grants Plaintiffs leave to amend.

The challenged Complaint is 136 pages long, but despite its length, many of its allegations are undetailed and conclusory, it is undifferentiated as to the various Defendants, and repeats, multiple times, vague and overly broad allegations. Such an approach is insufficient to satisfy the heightened pleading standards of the PSLRA and FED. R. CIV. P. 9(b).

To state a claim under § 10(b) of the 1934 Act, Plaintiffs must allege (1) a misrepresentation or omission; (2) of a material fact; (3) made with the intent to defraud; (4) on which the Plaintiffs relied; (5) which proximately caused the Plaintiffs' injury. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). A plaintiff's claims for a violation of § 10(b) of the 1934 Act must satisfy the strict pleading requirements for fraud set out in FED. R. CIV. P. 9(b) and the PSLRA. FED. R. CIV. P. 9(b) requires a specification of the alleged fraudulent statements, identification of the speaker, a description of when and where the statements were made, and an explanation of what makes such statements fraudulent. *Williams*, 112 F.3d at 178. Where, as here, allegations are made on information and belief,[1] a plaintiff must state with particularity all facts on which the belief is formed. 15 U.S.C. § 78u-4(b)(2).

For this and other similar cases pending before this Court, the Court now adopts standards which it will apply in evaluating Complaints subject to the PSLRA unless: (1) appellate courts whose decisions are dispositive in this district rule that the law mandates otherwise; or (2) Congress amends the PSLRA. First, for proof of scienter, which is "a mental state embracing intent to deceive,

---

[1] Despite the fact that the Complaint purports to be predicated on an investigation by Plaintiffs' counsel, the Court finds that information and belief pleading triggers the specificity requirement.

2

manipulate or defraud,"[2] the Court concludes that scienter can be based upon allegations of "motive and opportunity" as alternative to allegations of "conscious behavior or severe recklessness," thereby following the lead of most of the other courts in this district. *See Branca v. Paymentech, Inc.*, No. 3:97-CV-2507-L, 2000 WL 145083, at *5 (N.D. Tex. Feb. 8, 2000); *Coates v. Heartland Wireless Communications, Inc.*, 55 F. Supp. 2d 628, 642 (N.D. Tex. 1999) ("Coates II"); *Zuckerman v. Foxmeyer Health Corp.*, 4 F. Supp. 2d 618, 623 (N.D. Tex. 1998); *STI Classic Fund v. Bollinger Indus.*, No. 3:96-CV-823-R, 1996 WL 885802, at *1 (N.D. Tex. Oct. 25, 1996), *report and recommendation adopted in STI Classic Fund v. Bollinger Indus. Inc.*, 1996 WL 866699 (N.D. Tex. Nov. 12, 1996); *accord, Robertson v. Strassner*, 32 F. Supp. 2d 443, 448 (S.D. Tex. 1998). Second, this Court rejects the notion of "group pleading," and "group publication" and concludes that such concepts, if previously sustainable, did not survive the adoption of PSLRA. *Coates v. Heartland Wireless Communications, Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) ("Coates I"). To comply with the PSLRA, Plaintiffs thus must plead with particularity their allegations against each individual Defendant. The Court finds the Complaint at issue here generally deficient for its failure to delineate specifically what **each** Defendant knew and what each Defendant said. Plaintiffs will be required to replead to remedy such omission.

## PARTICULAR ASPECTS OF COMPLAINT

The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Court will thus review the scienter allegations in this Complaint as to each Defendant.

---

[2] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

Defendants Charles Hanson and Russell Gard, Ampad's Chief Executive Officer and Chief Operating Officer, respectively, sold a total of 100,000 of their shares[3] on November 10, 1997, for $13 per share. Although Ampad's stock price increased slightly shortly after their sales, it was not long before the stock price dropped substantially.[4] Plaintiffs allege that Hanson and Gard knew bad news about Ampad was forthcoming, and that they therefore sold enough stock to cover their cost or at least to avoid losses.[5] The Court finds such allegations sufficient to satisfy the motive aspect of scienter. With respect to Hanson and Gard, given their key roles in the Company, opportunity to defraud is clearly extant.

With respect to the other individual defendants, the Complaint does not adequately allege scienter as to them. Defendant Lavine, an outside director, bought Ampad stock on November 5, 1997 at $13.19, and apparently did not sell that stock during the class period. (Other non-

---

[3] During the class period, Hanson and Gard sold 20% of Ampad stock they owned, or 5% of their total stock and options. Five percent has been considered too insignificant to support the "strong inference of fraud" required by the PSLRA, while twenty percent has generally been considered sufficient. Defendants thus urge that the Court should consider Hanson and Gard's options in calculating what percentage of their Ampad stock portfolios Hanson and Gard sold. Plaintiff asserts the converse argument. In urging that this Court should take options into account, Defendants cite *In Re Credit Acceptance Corp. Sec. Litig.*, 50 Supp. 2d 662, 677 (E.D. Mich. 1999) and *In Re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999). In both of those cases, however, the courts analyzed the stock sales in detail and rejected the motive and opportunity test for proof of scienter. Here, the Court adopts a more lenient standard, and declines to hold that sales yielding proceeds which appear to have covered Hanson and Gard's costs for all of their Ampad stock investment cannot support a strong inference of fraud. The Court does not have before it admissible record evidence of the option prices, and consequently does not know that exercise of the options was potentially attractive.

[4] In the IPO, on July 2, 1996, Ampad's stock sold at $15 per share. It fell to $7 3/4 per share on December 17, 1997, the last day of the class period.

[5] Some of these contentions are referenced in the briefs, not in the Complaint. Plaintiffs are directed to include such allegations in their Amended Complaint, if they intend to rely on them.

Defendant officers bought Ampad stock at $12.88 and $12.94 on October 29, 1997 and November 7, 1997, respectively). The other outside directors, Defendants Gay, Wolpow and Watterson, neither bought nor sold stock during the class period.

With respect to all of the outside directors, Lavine, Gay, Wolpow and Watterson, a legally sufficient motive is not attributed to them. The fact that they are employees of Bain Capital, which sponsored funds which owned substantial stock in Ampad, is, as a matter of law, insufficient to provide them with a motive to perpetrate a fraud. There is no adequate pleading of claims against them under the higher "conscious behavior or severe recklessness" standard. Further, no individual allegations are asserted against them except for the claim that each of them signed the 1996 10-K, and that all but Watterson signed Ampad's Registration Statement. In light of this Court's rejection of the group pleading/group publication doctrine, those allegations do not state claims against the outside director Defendants.

As to the other individual officer Defendants, Benson and McAleer, Plaintiffs claim that their motive to defraud is founded on their desire for lucrative compensation, under their Ampad employment contracts and for bonuses (Complaint at ¶ 35). The Court finds such allegations insufficient as a matter of law to constitute motive as a basis for establishing scienter. *See Melder v. Morris*, 27 F.3d 1097, 1102-04 (5th Cir. 1994); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068-69 (5th Cir. 1994). Neither is the "conscious behavior or severe recklessness" standard satisfied by the allegations against Defendants Benson and McAleer.

With respect to the Bain Defendants (Bain Capital, Inc., Bain Venture Capital, a California Limited Partnership, Tyler Capital Fund, L.P., Tyler Massachusetts, L.P., Tyler International L.P. II, BCIP Trust Associates, L.P., and BCIP Associates), Plaintiffs' allegations of

legally sufficient motive are similarly lacking. Plaintiffs allege that the Bain Defendants were motivated to commit fraud because they stood to make a substantial profit in the IPO, would benefit from an inflation in the value of their retained holdings, and could expect to obtain large advisory fees in the future. However, the investing Bain defendants retained 10 million Ampad shares, which were not sold even when the stock price exceeded $24. Such facts are wholly inconsistent with the profit motive attributed to the Bain Defendants. If they knew, as Plaintiffs allege, that the Ampad "house of cards" was doomed to fail, they would have disposed of such shares. Bain Capital, Inc. and Bain Venture Capital, respectively, the management company and general partner of the four investment funds, did not own Ampad stock. The Court finds the compensation motive legally insufficient to state a claim.

Sufficient allegations of "conscious behavior or severe recklessness" are not stated as to the Bain Defendants; rather, such allegations are unsupportable conclusions without an adequate factual basis. To state a claim under the PSLRA against those parties, Plaintiffs must allege what each of the Bain Defendants knew, who specifically knew it, and when they learned it. Plaintiffs' claims that the Bain Defendants must have known the true facts because the funds, managed by Bain, owned a substantial amount of Ampad stock, and because several Bain employees were directors of Ampad, is legally insufficient. *See generally Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) and *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994).

With respect to the Underwriter Defendants, the allegations in the Complaint similarly do not set forth an adequate pleading of motive. There is no proper allegation that during or prior to the IPO the Underwriter Defendants participated in the making of statements they knew or

should have known to be false.[6] The vague hope of future business and the existence of an indemnity do not provide an adequate motive for the contention that the underwriters, later acting as analysts, gave positive outlooks for Ampad's future, despite an alleged belief that such positive spins were false. In fact, on this point, the Plaintiffs appear to be quite inconsistent. The Plaintiffs allege both that the individual analysts were "misled" (Complaint at ¶ 127), and that company insiders reviewed analysts' reports before they were issued and assured the analysts of their accuracy (see Complaint at ¶ 106), but simultaneously urge that the analysts' statements were false, misleading and recklessly made by "defendants." (Plaintiffs' Brief at 51-53). Such inconsistent and overly broad pleading is insupportable under the PSLRA and FED. R. CIV. P. 9(b).

Finally, as to Defendant Bankers Trust Corporation ("BTC"), a New York bank holding company, the allegations against it in the Complaint are also insufficient. Plaintiffs must show how BTC committed the wrongdoing alleged. It is insufficient for the Plaintiffs to allege conclusorily that BTC controlled or conspired with one or both of its subsidiaries, underwriter BT Securities, or Ampad's lender Bankers Trust Company (not named in the Complaint).

The allegations in the Complaint regarding the Williamhouse acquisition do not state actionable claims. At page nine, the Ampad prospectus accurately depicted Ampad's performance with (pro forma), and without (actual), Williamhouse's numbers included. As a matter of law, there is nothing deceptive about such a disclosure. To the extent Plaintiffs claim that Williamhouse's costs were inaccurately reported by Ampad (Complaint ¶ 126(a)), Plaintiffs

---

[6] The underwriters are not even alleged to have spoken during the pre-IPO roadshows.

must plead more specifically what the deficiencies with the reporting were, what was known about the deficiencies, when and by whom, and what effect the alleged misreporting had.

The Court finds the Plaintiffs' allegations regarding the LIFO reserve so confusing as to be legally insufficient. In ¶ 50(e) of the Complaint, and at numerous other places as well, Plaintiffs contend that in 1996, Ampad's profits were being adversely affected by declining paper prices. However, the LIFO claim is apparently based on the premise that paper prices were rising (Complaint ¶ 129), that proper LIFO accounting would thus decrease profitability, and that the LIFO reserve thus should have been increased, not decreased. Plaintiffs allege that the reserve was decreased for the third quarter of 1997, when Hanson and Gard made their sales, presumably to artificially inflate Ampad's profitability and thus maximize its stock price and Hanson's and Gard's proceeds. In fact, however, Ampad's LIFO reserves in the third quarter of 1997, although less than the reserves in the first and second quarters of 1997, were still more than twice what they had been in the last quarter of 1996. Plaintiffs' pleadings are insufficient in claiming that anything fraudulent was done with the LIFO reserves in 1997. During oral argument, Plaintiffs' counsel claimed that by the third quarter of 1997, Ampad's LIFO reserve was eliminated altogether. If that were true (and it seems doubtful from the evidence before the Court) and paper prices were <u>decreasing</u>, seemingly no fraud would be demonstrated. In light of the confusing and vague nature of their claims regarding the LIFO reserve, Plaintiffs are directed to replead.

The Court notes that the prospectus sets out four pages of risk factors which appear directly at odds with some of the Plaintiffs' allegations of wrongdoing. When Plaintiffs replead, the Court will carefully scrutinize the Complaint for allegations directly at odds with clearly,

accurately disclosed risks. Similarly, the Court will not treat as fraudulent statements which merely articulate accurate historical facts.

Finally, under *Central Bank v. Interstate Bank*, 511 U.S. 164 (1994), for a private claimant to state § 10(b) claims, primary violations, not aiding and abetting claims, must be asserted in order to be sustainable. Plaintiffs' allegations against most of the Defendants sound to the Court like aiding and abetting claims. In repleading, Plaintiffs are directed to make clear the basis as to each Defendant for any primary liability allegations under § 10(b).

Despite the deficiencies in the Complaint alluded to above, the Plaintiffs have the potential for stating proper claims actionable under the 1934 Act – particularly if they can support with facts claims that beginning in early 1997, certain Defendants **knew**, contrary to their public disclosures, that the Williamhouse acquisition was not contributing what they had expected it would add to Ampad's bottom line, that increasing paper prices had a serious potential for adversely affecting Ampad's profitability, and that, contrary to prior public statements, Ampad would not be pursuing new acquisitions and would not be introducing new products. Plaintiffs may attempt to better delineate such claims in their amended pleading.

Based on the foregoing discussion, Defendants' Motions to Dismiss the Complaint are granted. To the extent Plaintiffs may cure the deficiencies noted herein, they are given one additional opportunity to do so, by filing an Amended Complaint within forty-five days of the date of this Order. As an attachment to the Amended Complaint, they shall provide a red-lined version, reflecting all additions and deletions made to the original Complaint. Plaintiffs are directed to be specific, to eliminate confusing and repetitive material and to present an amended pleading which states facts with particularity as to each Defendant. The Court will look for

weighty allegations in terms of substance, not in terms of the bulkiness of the Amended Complaint. With respect to Bankers Trust Corporation and the outside directors in particular, the Court assumes that Plaintiffs' claims will, if reasserted, be substantially different from what they have asserted on theories which this Court has rejected. Defendants shall then file such further Motions to Dismiss as they deem appropriate, within forty-five days of the date of service of the Amended Complaint. Plaintiffs shall respond within thirty days thereafter, and Defendants shall reply within twenty days thereafter. The Court will then either schedule the matter promptly for argument or rule without argument.

All pending Motions to Dismiss are granted; provided, however, Plaintiffs may replead within forty five days of the date of this Order and further briefing, as set out herein, will follow.

**SO ORDERED.**

SIGNED this 13 day of September, 2000.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE