ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 4 2000

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALLAN ZISHKA, et al.,                  )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )    Civil No. 3-98-CV-0660-M
                                       )    (Consolidated with 3-98-CV-1072-H)
AMERICAN PAD & PAPER                   )
COMPANY, et al.,                       )
                                       )
            Defendants.                )

## MEMORANDUM OF THE BAIN DEFENDANTS IN SUPPORT
## OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

John D. Donovan, Jr.              Lee L. Cameron, Jr.
Mass. Bar No. 130950              Texas State Bar No. 03675380
Michele T. Perillo                WILSON, ELSER, MOSKOWITZ, EDELMAN
Mass. Bar No. 629343                & DICKER LLP
  ROPES & GRAY                    5000 Renaissance Tower
  One International Place         1201 Elm Street
  Boston, MA  02110               Dallas, Texas 75270
  (617) 951-7000                  (214) 698-8000


                        *ATTORNEYS FOR THE*
                        *BAIN DEFENDANTS*

Dated:  December 14, 2000

88106 1

143

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT.........................................................................................................................5

    I.     To Plead a Section 20(a) Claim, the PSLRA Requires Plaintiffs to
            Allege a Knowing Violation of the Securities Laws Against the Bain
            Defendants ........................................................................................................6

    II.    Plaintiffs' Section 20(a) Claim Against the Bain Defendants Must Be
            Dismissed for Failure to Allege Specific Facts Tending to Show that
            the Bain Defendants Exercised Control Over Any Alleged Disclosure
            Violation .........................................................................................................10

    III.   Plaintiffs' Section 20(a) Claim Must Be Dismissed for Failure to Allege
            Any Primary Securities Law Violation .................................................16

CONCLUSION.....................................................................................................................17

88106.1

## TABLE OF AUTHORITIES

### CASES

*Associated Builders, Inc. v. Alabama Power Co.,*
    505 F.2d 97 (5th Cir. 1974) ......................................................................5

*Branca v. Paymentech, Inc.,*
    No. 3:97-CV-2507-L, 2000 U.S. Dist. LEXIS 1704
    (N.D. Tex. Feb. 8, 2000) ...................................................................3, 14

*Brown v. Enstar Group,*
    84 F.3d 393 (11th Cir. 1996) ..................................................................11

*In re Browning-Ferris Indus. Inc. Sec. Litig.,*
    876 F. Supp. 870 (S.D. Tex. 1995) ..........................................................9

*Cameron v. Outdoor Resorts of America, Inc.,*
    608 F.2d 187 (5th Cir. 1979) ..................................................................10

*Carpenter v. Harris, Upham & Co.,*
    594 F.2d 388 (4th Cir. 1979) ................................................................8, 9

*Coates v. Heartland Wireless Communs., Inc.,*
    26 F. Supp. 2d 910 (N.D. Tex. 1998) .....................................................13

*In re CompUSA Inc. Sec. Litig.,*
    No. 3:94-CV-1151-H, 1995 WL 811960
    (N.D. Tex. Oct. 30, 1995) ........................................................................2

*Copland v. Grumet,*
    No. 96-3351 (MLP), 1998 WL 256654
    (D.N.J. Jan. 9, 1998) ..............................................................................14

*Dennis v. General Imaging, Inc.,*
    918 F.2d 496 (5th Cir. 1990) ...................................................................8

*G.A. Thompson & Co. v. Partridge,*
    636 F.2d 945 (5th Cir. 1981) ..............................................................8, 10

*Guidry v. Bank of LaPlace,*
    954 F.2d 278 (5th Cir. 1992) ...................................................................5

-ii-

*Gordon v. Burr,*
  506 F.2d 1080 (2d Cir. 1974)..................................................................................9

*Hill York Corp. v. American Int'l Franchises, Inc.,*
  448 F.2d 680 (5th Cir. 1971) ...............................................................................10

*Jaffe v. Bosco,*
  No. 3:96-CV-2064-X, 1996 WL 727981
  (N.D. Tex. Sept. 26, 1996)...................................................................................10

*Lovelace v. Software Spectrum, Inc.,*
  78 F.3d 1015 (5th Cir. 1996) .............................................................................2, 15

*In re Medimmune, Inc., Sec. Litig.,*
  873 F. Supp. 953 (D. Md. 1995)..............................................................................8

*Melder v. Morris,*
  27 F.3d 1097 (5th Cir. 1994) ...............................................................................14

*Metge v. Baehler,*
  762 F.2d 621 (8th Cir. 1985) ...............................................................................15

*Molinari v. Symantec Corp.,*
  No. C-97-20021-JW, 1998 WL 78120
  (N.D. Cal. Feb. 17, 1998).....................................................................................13

*In re Oak Tech. Sec. Litig.,*
  No. 96-20552, 1997 WL 448168
  (N.D. Cal. Aug. 1, 1997).......................................................................................13

*Paracor Finance v. GE Capital Corp.,*
  96 F.3d 1151 (9th Cir. 1996) ...............................................................................11

*Pharo v. Smith,*
  621 F.2d 656 (5th Cir. 1980) ...............................................................................11

*Picard Chem. Profit Sharing Plan v. Perrigo Co.,*
  940 F. Supp. 1101 (W.D. Mich. 1996) ........................................................11, 13, 14

*Raab v. General Physics Corp.,*
  4 F.3d 286 (4th Cir. 1993) .....................................................................................8

88106.1

*RGB Eye Associates, P.A. v. Physician Resource Group, Inc.*,
    No. 3:98-CV-1715D, 1999 U.S. Dist. LEXIS 21940
    (N.D. Tex. May 13, 1999)...................................................................................9

*Rochez Brothers, Inc. v. Rhoades*,
    527 F.2d 880 (3d Cir. 1975).............................................................................9

*S.E.C. v. First Jersey Securities, Inc.*,
    101 F.3d 1450 (2d Cir. 1996)...........................................................................9

*Shushany v. Allwaste, Inc.*,
    992 F.2d 517 (5th Cir. 1993) ...........................................................................5

*Sloane Overseas Fund v. Sapiens Int'l Corp.*,
    941 F. Supp. 1369 (S.D.N.Y. 1996)................................................................12

*Tuchman v. DSC Communs. Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ...........................................................................5

*Weld v. Stage Stores, Inc.*,
    No. H-99-0957 (S.D. Tex. Dec. 8, 1999).........................................................9

*Wool v. Tandem Computers, Inc.*,
    818 F.2d 1433 (9th Cir. 1987) .......................................................................10

## STATUTES

15 U.S.C. § 78t(a) ...................................................................................................6

15 U.S.C. § 78u-4(b)(2) ..........................................................................................7

15 U.S.C. § 78u-4(f)(2)(A) ......................................................................................6

88106.1

## MISCELLANEOUS

Fed. R. Civ. P. 9(b)   ............................................................................................ 8

141 Cong. Rec. H15214, H15216 (statement of Rep. Fields)............................................ 8

141 Cong. Rec. H15214, H15216 (statement of Rep. Tauzin) ........................................ 7

141 Cong. Rec. S19146, S19149 (statement of Sen. Bradley).................................... 8, 9

H.R. Rep. No. 369 (1995), <u>reprinted in</u> 1996 U.S.C.C.A.N. 730 .................................... 7

88106.1

## MEMORANDUM OF LAW IN SUPPORT OF THE BAIN
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Bain Capital, Inc. ("Bain"), joined by three of its principals who sat on American Pad & Paper Company's board of directors, Robert C. Gay, Jonathan S. Lavine and Mark B. Wolpow (collectively the "Bain Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint for failure to state a claim against them upon which relief can be granted.

### INTRODUCTION

At oral argument on the defendants' motions to dismiss the plaintiffs' first complaint, this Court asked whether it was the plaintiffs' "position that the fact that Bain had members on the board means that Bain is liable without more of an allegation than that?" *Transcript* ("*Tr.* ") at 47. The plaintiffs' response -- that the Bain Defendants were liable "as control persons" -- was astonishing for two reasons: First, the complaint did not even invoke Section 20(a) of the Exchange Act, upon which "control person" liability might be predicated. And more importantly, neither the pleading nor the plaintiffs' response articulated how and under what circumstances Bain possessed -- and exercised -- any "control." In essence, the plaintiffs attempted to suggest that putting representatives on the Board -- "without more" in the Court's words -- *could* be a basis for securities law liability.

The plaintiffs' new complaint addresses the first problem. It at least cites the "control person" statute. But that is *all* it does. The pleading does not even attempt to address the second issue. The Amended Complaint alleges that Bain Capital and its three representatives on the board were "*positioned* to dictate the Company's conduct" by virtue of Bain's stock ownership. *Am. Ct.* ¶ 51 (emphasis added). But it does not -- and could not -- allege that Bain or any Bain-nominated director actually *exercised* any purported power to "control" American Pad and Paper ("AmPad" or

88106.1

the "Company"). And it certainly does not allege that either Bain or these directors used their ostensible power *in connection with the alleged disclosure violations*. The plaintiffs thus continue to claim, as they did when the Court first posed its question, that because "Bain had members on the board [that] means that Bain is liable without more of an allegation than that[.]" *Tr.* at 47.

But that is emphatically not the law. The absence of any allegation that defines how the Bain Defendants acquired and exercised their power -- and exercised it specifically in connection with the alleged disclosure violations -- ignores this Court's directive to "be specific[,] . . . eliminate confusing and repetitive material . . . and present an amended pleading which states facts with particularity as to *each* Defendant." *Memorandum Opinion and Order* at 9 (emphasis added). More importantly, the absence of "weighty allegations in terms of substance" against the Bain Defendants, *id.* at 10, omits an essential ingredient of a "control person" claim. For without saying how control exists and was wielded, the plaintiffs would make the Bain Defendants liable solely by virtue of their *status*, and not their conduct. Since the PSLRA requires "knowing" conduct even for secondary liability, status is insufficient. Bain and its representatives cannot be liable as bystanders.

## STATEMENT OF FACTS

### The Bain Defendants

Among the defendants named by the plaintiffs in this action is Bain Capital, Inc., which was the management company of four investment funds (the "Bain Capital Funds") holding stock in the Company throughout the alleged Class Period. (Prospectus at 51).[1] Plaintiffs have excised from

---

[1] On a motion to dismiss, this Court may consider (i) the full text of documents attached to or incorporated by reference in the complaint, see Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996); (ii) matters subject to judicial notice, such as public disclosure documents required by law to be filed and actually filed with the SEC, see id. at 1018; and (iii) stock prices, see In re CompUSA Inc. Sec. Litig., No. 3:94-CV-1151-H, 1995 WL 811960, at

-2-

their Amended Complaint that portion of the first complaint that explains that it is the Bain Capital Funds, and not Bain Capital, Inc., who owned stock in AmPad. (Compare *Ct.* ¶ 23 with *Am. Ct.* ¶ 12). The Amended Complaint also names three Bain principals who sat on AmPad's board of directors: Robert C. Gay, Jonathan S. Lavine and Mark B. Wolpow.

## Summary of the Allegations Against the Bain Defendants

Despite the volume of the 56-page Amended Complaint, the Court need look no further than page 7 to reach the end of all allegations against the Bain Defendants. In paragraph 1, plaintiffs summarily allege that "Bain" -- an undefined entity[2] -- by virtue of its stock ownership, representatives on AmPad's Board of Directors and management contract with the Company, "w[as] positioned to dictate the Company's conduct." (*Am. Ct.* ¶ 1; see also *Am. Ct.* ¶ 12.) Nowhere in the Amended Complaint do plaintiffs reveal how this "position[ing]" occurred nor do they reveal *any* conduct "dictate[d]" by Bain.

In paragraph 15, entitled "Defendants' Scienter," plaintiffs vaguely allege that the four AmPad internal managers "interfaced" with "controlling shareholder Bain." (*Am. Ct.* ¶ 15.) The details of this "interface" are not disclosed. The pleading does not say what facts the managers imparted to Bain or the board. It does not say what disclosures management told Bain or the

---

*10 n.14 (N.D. Tex. Oct. 30, 1995). The AmPad Prospectus cited above can be found at Tab 2 of the Appendix to the Memorandum of American Pad & Paper Company and the Individual Defendants in Support of Their Motion to Dismiss dated Sept. 18, 1998.

[2] Throughout the Amended Complaint, plaintiffs refer to the Bain Defendants as "Bain" without definition, making it impossible it determine which allegations are lodged against which defendant. See, e.g., *Am. Ct.* ¶¶ 1-3, 6, 12, 14-15, 112-113 . As this Court stated in its decision dismissing the first Complaint, such group pleading is impermissible under the PSLRA. *Memorandum Opinion and Order* at 3 ("[T]his Court rejects the notion of 'group pleading,' and 'group publication' and concludes that such concepts, if previously sustainable, did not survive the adoption of [the] PSLRA."); accord Branca v. Paymentech, Inc., No. 3:97-CV-2507-L, 2000 U.S. Dist. LEXIS 1704, at *26 (N.D. Tex. Feb. 8, 2000).

-3-

Amended Complaint do plaintiffs reveal how this "position[ing]" occurred nor do they reveal *any* conduct "dictate[d]" by Bain.

In paragraph 15, entitled "Defendants' Scienter," plaintiffs vaguely allege that the four AmPad internal managers "interfaced" with "controlling shareholder Bain." (*Am. Ct.* ¶ 15.) The details of this "interface" are not disclosed. The pleading does not say what facts the managers imparted to Bain or the board. It does not say what disclosures management told Bain or the directors it intended to make. And it does not even hint that, during any "interface," Bain or the directors told management what to say. Thus, beyond the conclusory allegations of "interface" and "control," the Amended Complaint says nothing more about either the existence or the exercise of "control."

To be sure, the Amended Complaint goes on to discuss misleading statements made in connection with the IPO "roadshow" presentations (*Am. Ct.* ¶ 36). But nowhere does it make the allegation that any of the Bain Defendants were even *at* any of the roadshow events. And it certainly does not tie any particular statement made during the roadshow to a Bain Defendant. Likewise, for the period after the IPO, the Amended Complaint devotes page after page to a recitation of AmPad quarterly announcements of results, and juxtaposes them with excerpts from the reports of various securities analysts. (*Am. Ct.* ¶¶ 45-49; 52-56; 58-61; 63-66; 68; 71-74; 81-83; 88-90; 94-97). But this recitation does not link any of the disclosures in the quarterly reports to Bain; it suggests no nexus between Bain and any analyst; and it omits entirely to allege any knowledge on Bain's part about the truth or falsity of *either* the quarterly reports or the analysts' commentary. Whether the complaint is advancing allegations about acquisitions, LIFO reserves, paper pricing, business strategy, or accounting issues, Bain and the Bain directors are conspicuously absent.

-4-

Indeed, the only other allegations of the entire complaint that even mention the Bain Defendants are the "scienter" allegations that were also in the first complaint. This pleading repeats the charge that Bain must have known of "false" statements or concealed "facts" because (1) "Bain" profited from the IPO by selling a portion of its stock in AmPad (*Am. Ct.* ¶¶ 1, 6) seventeen months before AmPad suffered its business reversals, and (2) the IPO was inspired by the Company's desire to reduce the debt incurred in the LBO that Bain had led years before. (*Am. Ct.* ¶¶ 2-3). Of course, the profit on Bain's stock sale and the use of the IPO proceeds were fully disclosed in the IPO prospectus. (*Prospectus* at 15-16).

Consequently, the plaintiffs' entire "control person" theory against the Bain Defendants reduces to Bain's stock ownership, its affiliation with a majority of the board, and the existence of a consulting contract between Bain and AmPad. As set forth below, these paltry allegations are insufficient to make out a case for Section 20(a) liability.

## ARGUMENT

A motion to dismiss should be granted where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Tuchman v. DSC Communs. Corp., 14 F.3d 1061, 1067 (5th Cir. 1994). The court must accept the complaint's well-pleaded *factual* allegations as true. Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993). And while the court may draw reasonable inferences from plaintiffs' well-pleaded facts, the court need not accept as true "'conclusory allegations and unwarranted deductions of facts.'" Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992) (quoting Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)). This is especially true where those conclusions are contradicted by facts disclosed in documents referenced in the complaint. Associated Builders, Inc., 505 F.2d at 100.

-5-

88106.1

**I.     To Plead a Section 20(a) Claim, the PSLRA Requires Plaintiffs to Allege a Knowing Violation of the Securities Laws Against the Bain Defendants.**

Unable to state a claim against the Bain Defendants for a primary violation of § 10(b) of the

Securities Exchange Act of 1934, plaintiffs now try to invoke § 20(a) by making conclusory

allegations that the Bain Defendants are "controlling persons."  At bottom, the § 20(a) allegations

are an attempt to make an end-run around the Private Securities Litigation Reform Act of 1995

("PSLRA").

Section 20(a) of the Exchange Act, which governs the liability of controlling persons for

another's securities fraud, provides as follows:

> Every person who, directly or indirectly, controls any person liable
> under any provision of this chapter or of any rule or regulation
> thereunder shall also be liable *jointly and severally* with and to the
> same extent as such controlled person to any person to whom such
> controlled person is liable, unless the controlling person acted in good
> faith and did not directly or indirectly induce the act or acts
> constituting the violation or cause of action.

15 U.S.C. § 78t(a) (emphasis added).  Since § 20(a) is a joint and several liability provision, the

following provision of the PSLRA also applies:

> Any covered person against whom a final judgment is entered in a
> private action shall be liable for damages jointly and severally only if
> the trier of fact specifically determines that such covered person
> *knowingly* committed a violation of the securities laws.

15 U.S.C. § 78u-4(f)(2)(A) (emphasis added).  Finally, the PSLRA also provides that

> [i]n any private action arising under this chapter in which the plaintiff
>
> may recover money damages only on proof that the defendant acted
>
> with a particular state of mind, *the complaint shall*, with respect to
>
> each act or omission alleged to violate this chapter, *state with*

-6-

> *particularity facts giving rise to a strong inference that the defendant*
>
> *acted with the required state of mind.*

15 U.S.C. § 78u-4(b)(2) (emphasis added).  Because recovery under § 20(a) requires proof that the allegedly controlling person acted with a particular state of mind, the PSLRA requires plaintiffs to set forth facts giving rise to a strong inference that the Bain Defendants acted with the required mental state -- that is, a *knowing* violation of the securities laws.  By definition, pleading a "knowing" violation requires pleading more than the "power" to control a company.  It also requires the articulation of facts raising the "strong inference" that such power was used and that it was specifically employed in connection with disclosures that are false and misleading.

The PSLRA's requirement that a plaintiff particularly allege facts supporting a strong inference of the *exercise* of control on a § 20(a) claim is confirmed by the Act's legislative history and purpose.  To achieve its goal of curbing frivolous securities litigation, the PSLRA provides heightened pleading requirements for cases of fraud and underscores the factual particularity that must be pled to sustain such actions.[3]  The heightened pleading requirements were meant to eliminate "costly fishing expeditions" by plaintiffs who rely on the discovery mechanism to search for fraud rather than stating from the onset the basis for their fraud claim.[4]  If a plaintiff could merely

---

[3]  See H.R. REP. NO. 369 (1995), reprinted in 1996 U.S.C.C.A.N. 730 (discussing heightened pleading requirement of PSLRA and stating: "The plaintiff must also specifically plead with particularity each statement alleged to have been misleading.  The reason or reasons why the statement is misleading must also be set forth in the complaint in detail.  If an allegation is made on information and belief, the plaintiff must state with particularity all facts in the plaintiff's possession on which the belief is formed.").

[4]  141 CONG. REC. H15214, H15216 (statement of Rep. Fields); see 141 CONG. REC. H15214, H15217 (statement of Rep. Tauzin) ("Now, the pleading requirements are what the plaintiff lawyer does when he files a lawsuit, and what we have done is make sure that the lawyer alleges a case, that you just do not go on a fishing expedition.  Is that terrible?  I suggest if we are trying to deal with frivolous lawsuits, that is the very least we ought to do is require the plaintiff lawyer to plead a case, to have a decent and not frivolous lawsuit before the court."); 141 CONG. REC. S19146,

88106.1

make conclusory allegations of control under § 20(a), without articulating how control was exercised -- and thus why the controller's conduct was "knowing" -- the Act's entire purpose would be circumvented. Plaintiffs who could *not* sue directors or officers *directly* under Section 10(b) and Rule 10b-5 because they could *not* make out particularized facts supporting scienter could instead sue them *indirectly* under § 20(a). Surely Congress did not intend to let plaintiffs rope directors into securities lawsuits without facts attesting to their involvement in a disclosure violation by the simple expedient of calling them control persons.[5]

Indeed, application of the PSLRA's "heightened" pleading standards to a § 20(a) claim is fully consistent with the pre-PSLRA jurisprudence of this Circuit, under which § 20(a) required particularized allegations of a controlling person's mental state. Long before the reform act was passed, the Fifth Circuit had squarely held that a controlling person will not be liable under § 20(a) unless his acts were at least reckless. Dennis v. General Imaging, Inc., 918 F.2d 496, 509 (5th Cir. 1990); G.A. Thompson & Co. v. Partridge, 636 F.2d 945, 959 (5th Cir. 1981). Courts following the Fifth Circuit's guidance have thus required facts supporting that mental state to be specifically pled.

---

S19149 (statement of Sen. Bradley) ("First, it ensures that the lawsuit must have merit by setting forth pleading standards which require that the plaintiffs must have a basis for their case before they are allowed to proceed. Many times, a case is brought with little evidence and legal fishing expedition ensues through the defendant's files. In some cases, firms will settle the suit in order to save themselves the long-run costs associated with discovery and litigation of the case.").

[5] Indeed, before the passage of the PSLRA, certain courts recognized the potential for abusive litigation under § 20(a). For example, the court in In re Medimmune, Inc., Sec. Litig., 873 F. Supp. 953 (D. Md. 1995), noted that specificity comparable to that required under Fed. R. Civ. P. 9(b) "is required where, as here, Plaintiffs attempt to fix liability on every Defendant for every statement made by every other Defendant based on Section 20(a) . . . . Allegations of 'control' must set forth that a given Defendant had both the power to control a person and that the Defendant, in bad faith, directly or indirectly induced the act constituting the violation." Id. at 961 (citing Carpenter v. Harris, Upham & Co., 594 F.2d 388, 394 (4th Cir. 1979)). "[T]o the extent that independent statements of third parties may be involved, the complaint must plead with specificity which Defendant supplied the information to the third party, how it was supplied, and how the Defendant could have controlled the content of the statement." In re Medimmune, 873 F. Supp. at 961 (citing Raab v. General Physics Corp., 4 F.3d 286 (4th Cir. 1993)).

-8-

Weld v. Stage Stores, Inc., No. H-99-0957, at 11 (S.D. Tex. Dec. 8, 1999) ("[p]ursuant to § 20(a), the plaintiff is required to plead specific facts to demonstrate how each individual defendant possessed the power to control or prevent the primary securities violation.") (attached to June 8, 2000 letter to Court from John D. Donovan, Jr.); In re Browning-Ferris Indus. Inc. Sec. Litig., 876 F. Supp. 870, 911 (S.D. Tex. 1995) ("To establish a prima facie case under section 20(a) in the Fifth Circuit, plaintiffs must demonstrate that the individual participated in or induced the alleged primary violation."). In this District, Judge Fitzwater recently found that a properly pled § 20(a) claim includes "particularized facts as to each controlling person's culpable participation in the fraud perpetrated by the controlled person." RGB Eye Assocs., P.A. v. Physician Resource Group, Inc., No. 3:98-CV-1715D, 1999 U.S. Dist. LEXIS 21940, at *39-40 (N.D. Tex. May 13, 1999). This holding is consistent with several other circuits that have considered the issue. See, e.g., S.E.C. v. First Jersey Secs., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996) ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show . . . that the controlling person was 'in some meaningful sense [a] culpable participant [ ] in the fraud perpetrated by [the] controlled person [ ].'") (quoting Gordon v. Burr, 506 F.2d 1080, 1085 (2d Cir. 1974)); Carpenter v. Harris, Upham & Co., 594 F.2d 388, 394 (4th Cir. 1979) ("The intent of Congress reflected a desire to impose liability only on those who . . . are in some meaningful sense culpable participants in the acts perpetrated by the controlled person."); Rochez Bros., Inc. v. Rhoades, 527 F.2d 880, 889-90 (3d Cir. 1975) (finding that legislative history to § 20(a) mandates that any interpretation of the statute include a culpable participation element).

Taken together, the reform act's language, its purpose and legislative history, and this Circuit's jurisprudence all suggest the same result. To make out a case of "control person" liability,

-9-

a plaintiff must allege specific facts that raise the "strong inference" that "control" existed, and was wielded, in connection with the disclosure violations alleged. Here, the Amended Complaint does not begin to make this showing against the Bain Defendants.

**II.     Plaintiffs' Section 20(a) Claim Against the Bain Defendants Must Be Dismissed for Failure to Allege Specific Facts Tending to Show that the Bain Defendants Exercised Control Over Any Alleged Disclosure Violation**

Plaintiffs rely on three alleged facts to support their controlling person claim against the Bain Defendants: (1) Bain's purported stock ownership,[6] (2) its representatives' status as a "majority" of the Board of the Company and (3) the provision of consulting and other financial and support services to AmPad pursuant to a management contract. See *Am. Ct.* ¶ 1. An examination of each demonstrates the superficiality of plaintiffs' § 20(a) claim.

First, plaintiffs base their § 20(a) claim on the allegation that Bain owned 90% of AmPad's shares prior to the IPO and 38.5% of the shares after the IPO. While there is old dicta in this Circuit that a large shareholder "might" be a controlling person as a matter of law, see Hill York Corp. v. American Int'l Franchises, Inc., 448 F.2d 680, 694 n.20 (5th Cir. 1971), this Circuit has never actually held that a defendant's status alone is sufficient to establish control. Rather, the Circuit's decisions have always required some additional indicia, such as the actual exercise of control, to impose "control person" liability.[7] Thus, for example, in Cameron v. Outdoor Resorts of America,

---

[6] Bain never owned any shares of AmPad. See Statement of Facts *supra.*

[7] Compare Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1441-42 (9th Cir. 1987) (holding that narrowly defined group of high-level corporate officers who were in charge of the day-to-day operations of a company and directly involved in issuing financial statements alleged to be misleading could be liable as "controlling persons"); G.A. Thompson, 636 F.2d at 958 (holding that a 24% shareholder who was an officer and director and involved in the day-to-day coordination of loan coordination -- the activity where the securities violation was alleged to have occurred -- had "the requisite power to directly or indirectly control or influence corporate policy."); Jaffe v. Bosco, No. 3:96-CV-2064-X, 1996 WL 727981, at * 6 (N.D. Tex. Sept. 26, 1996) (officers and directors involved in day-to-day operations of

-10-

Inc., 608 F.2d 187, 195 (5th Cir. 1979), the Fifth Circuit held that the company's chairman of the board of directors was not a "controlling person" by virtue of this status.  Because the chairman did not have effective day-to-day control over the operations of corporation and did not have knowledge of allegedly fraudulent conduct, the plaintiff's claim of "control" was insufficient. And such holdings make sense.  One can certainly imagine absentee owners -- even 100% owners -- who delegate matters to management, just as one can imagine directors who set overall policy and leave the exercise of daily discretion to executives.  But in neither case can one say such an owner or director exercises actual "control."

As applied here, the other indicia of "control" that the Fifth Circuit and other courts have required are simply lacking.  Other than a passing reference to unspecified "interface" between "Bain" and various executives of AmPad, see *Am. Ct.* ¶ 15, the plaintiffs make no allegation -- let alone aver supporting facts -- that the Bain Defendants were involved in the day-to-day operations of AmPad.  The inference of "exercise" of control that might otherwise make Bain's stock ownership relevant is simply lacking.

Likewise,  the plaintiffs also fail to make any distinction with respect to time.  Whether a defendant is a controlling person can vary temporally.  The relevant question is whether a defendant possessed the power to control during the time when the events in question took place.  See, e.g., Brown v.  Enstar Group, 84 F.3d 393, 397 (11th Cir. 1996) (holding the defendant chairman of the

---

company were controlling persons)  with Paracor Fin. v. GE Capital Corp., 96 F.3d 1151, 1162-63 (9th Cir. 1996) (lender is not controlling person absent day-to-day control of operations of company); Pharo v. Smith, 621 F.2d 656, 670 (5th Cir. 1980) (defendant who was less than 10% shareholder, had no representatives on company's board, and was not an officer, did not have requisite power to control the company's management to be held liable as a "controlling person"); Picard Chem. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101, 1135 (W.D. Mich. 1996) (outside directors with 2-5% stock ownership are not liable simply because of their status).

88106.1

board of directors was not a controlling person at the time the fraudulent Prospectus was disseminated). Here, it is undisputed that Bain possessed a majority of AmPad's stock *before* the IPO -- although an inference of the exercise of that control is conspicuously absent. But more importantly, the bulk of the Amended Complaint's allegations and the duration of the Class Period pertain to events *after* the offering, when Bain's ownership had dwindled to about one-third of the outstanding shares. (*Am. Ct.* ¶ 12; Prospectus at 51.)

At bottom, then, the plaintiffs' allegations about Bain's stock ownership, and its resulting "position[ing]" to "dictate" the Company's conduct, are all percussion cap and no powder. They permit the inference that Bain had the *potential* to control the Company; but they do not suggest that Bain's power to "dictate" ever resulted in it *acting* as dictator.

Second, plaintiffs allege that the Bain Defendants are "control persons" based on their affiliation with a "majority" of AmPad directors. As with stock ownership, mere service as a director raises no inference about the exercise of a director's power or influence in connection with any company activity, much less specific disclosures. Indeed, in this case, the Amended Complaint makes no allegation that the Board *qua* Board was involved in any communication at issue. As a result, whether or not Bain had the power to control the Board or any member thereof is irrelevant to their § 20(a) claim. The mere fact that certain directors were also employees, partners, or managing directors of a Bain entity simply does not support a claim that Bain or these directors actually became involved in a disclosure decision. See, e.g., Sloane Overseas Fund v. Sapiens Int'l Corp., 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996) (dismissing controlling person claim against a defendant who was a founder and creditor of the company involved in fraudulent conduct, had its

-12-

vice president on the company's board of directors, was an 8% shareholder and an underwriter for the offering alleged to have been fraudulent).

Read literally, plaintiffs' allegations seem to be that, based on their status on AmPad's Board, the Bain Defendants had *access* to communications among corporate management. But the ability to share information with management is not the same as actually possessing information. And whether facts are known or not is not the same as deciding what to disclose. In short, the ability to *learn* is not congruent with the power to *instruct* what management should publicly report. And since the Amended Complaint does not even attempt to make the connection -- it does not even hint that any Bain Defendant ever told management what to do or say -- no inference of the exercise of control arises. See, e.g., Picard Chem., 940 F. Supp. at 1135-36. Plaintiffs do not explain with any specificity how the Bain Defendants "interfaced" with the managers, what those alleged communications supposedly revealed, which Bain representatives attended what meetings with which corporate officers, or what was supposedly said at any such meetings. Plaintiffs' conclusory assertions fail to satisfy the PSLRA and certainly do not give rise to a strong inference that the Bain Defendants acted with the requisite state of mind. Accord Molinari v. Symantec Corp., No. C-97-20021-JW, 1998 WL 78120, at *11 (N.D. Cal. Feb. 17, 1998) (rejecting allegations that defendants "knew the adverse non-public information . . . via access to corporate documents . . . [,] conversations and connections with corporate officers and employees"); In re Oak Tech. Sec. Litig., No. 96-20552, 1997 WL 448168, at *11 (N.D. Cal. Aug. 1, 1997).

Quite apart from the "ability" to learn information, conclusory allegations that the Bain-nominated directors actually knew adverse true facts because of their high positions in the Company also cannot give rise to control person liability. See, e.g., Coates v. Heartland Wireless Communs.,

-13-

88106.1

Inc., 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) (dismissing § 20(a) claims: "A director, officer, or

even the president of a corporation often has superior knowledge and information, but neither the

knowledge nor the information invariably attaches to those positions, and plaintiffs have not pointed

to specific reports, circulated among defendants, which contained the adverse information defendants

are charged with knowing") (citing In re Advanta Corp. Sec. Litig., No. 97-CV-4343, 1998 WL

387595 (E.D. Pa. July 9, 1998), aff'd, 180 F.3d 525 (3d Cir. 1999)); Branca, 2000 U.S. Dist. LEXIS

1704, at *34 ("Allegations that a party knew or should have known that false representations were

being made merely by virtue of his position within a company are, as a matter of law, insufficient

to plead scienter.") (citing Melder v. Morris, 27 F.3d 1097, 1103 (5th Cir. 1994)); Copland v.

Grumet, No. 96-3351 (MLP), 1998 WL 256654, at *14 (D.N.J. Jan. 9, 1998) (dismissing § 20(a)

claim which was based on conclusory allegations that defendants, by virtue of their positions of

power, controlled all aspects of the company's operations, including the dissemination of

information) (citations omitted).   Thus, the § 20(a) claims against the Bain Defendants must be

dismissed.

Finally, plaintiffs mention a consulting contract between "Bain" and the Company several

times in the Amended Complaint, but never provide any detail as to its provisions. See, e.g., *Am.

Ct.* ¶¶ 12, 112. Nor does the pleading say who supplied consulting services, what information was

transmitted under the contract, or how any advice related to disclosures. These allegations are

therefore insufficient to establish an inference of control, much less the exercise of that control.

Picard Chem., 940 F. Supp. at 1135. Again, plaintiffs have failed to establish the necessary nexus

between Bain's *status* -- here, as a consultant -- and the specific disclosures at issue in this case.

-14-

88106.1

On all three points -- stock ownership, Board representation, and consultant status -- the Amended Complaint leaves the Court without answers to essential questions:  What did Bain do?  What did Bain know?  What did Bain instruct AmPad's management to do?  Because the pleading supplies no answers, it fails to allege sufficiently any facts to show that the Bain Defendants can be maintained in this action as controlling persons.  Their claim should  be dismissed.  See, e.g., Metge v. Baehler, 762 F.2d 621, 631-32 (8th Cir. 1985) (dismissing plaintiff's controlling person claim against defendant that owned 18% of the company's shares, 51% of the shares of the company's subsidiary, and whose personnel attended some of the company's board meetings because plaintiff failed to show that defendant actually exercised control over the company's operations).

**III.    Plaintiffs' Section 20(a) Claim Must Be Dismissed for Failure to Allege Any Primary Securities Law Violation**

Finally, for the reasons set forth in prior memoranda filed in this case and in the memorandum of the AmPad Defendants, plaintiffs have failed to plead a primary violation of the securities laws by any defendant whom the Bain Defendants are alleged to have controlled.  For that reason alone, plaintiffs have failed to state a § 20(a) claim against the Bain Defendants.  In the absence of a sufficiently pled primary violation, plaintiffs' controlling person claim must be dismissed.  Lovelace, 78 F.3d at 1021 n.8.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint must be dismissed.  To the extent that it is dismissed pursuant to Rule 12(b)(6), dismissal should be with prejudice because amendment would be futile.

-15-

88106.1

By their attorneys,

John D. Donovan, Jr.
Mass. Bar No. 130095
Michele T. Perillo
Mass. Bar No. 629343
  ROPES & GRAY
  One International Place
  Boston, MA  02110
  (617) 951-7000

Lee L. Cameron, Jr.
Texas State Bar No. 03675380
  WILSON, ELSER, MOSKOWITZ, EDELMAN
  & DICKER LLP
  5000 Renaissance Tower
  1201 Elm Street
  Dallas, Texas 75270
  (214) 698-8000


*ATTORNEYS FOR THE*
*BAIN DEFENDANTS*

Dated:  December 14, 2000

-16-

88106.1

## CERTIFICATE OF SERVICE

I, Lee L. Cameron, Jr., hereby certify that on this 14th day of December 2000, true and correct copies of the Memorandum of the Bain Defendants in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint were served upon all counsel of record as follows:

Kirk B. Hulett
MILBERG WEISS BERSHAD HYNES & LERACH, L.L.P.
600 West Broadway, Suite 1800
San Diego, CA 92101
(U.S. First Class Mail)

Marc R. Stanley
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX 75205
(U.S. First Class Mail)

Robert J. Hill
KILGORE & KILGORE, INC.
700 McKinney Place
3131 McKinney Avenue, L.B. 103
Dallas, TX 75204-2472
(U.S. First Class Mail)

Stephen A. Whinston
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(U.S. First Class Mail)

Patricia J. Villareal
Terence M. Murphy
Britt K. Latham
JONES, DAY, REAVIS & POGUE
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201-2958
(Overnight Delivery)

88106.1

Robin C. Gibbs
Kathy D. Patrick
Jeffrey J. Cotner
GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, TX 77002
(U.S. First Class Mail)

James W.B. Benkard
Frances E. Bivens
DAVIS, POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(Overnight Delivery)

Ernest E. Figari
FIGARI & DAVENPORT
4800 NationsBank Plaza
901 Main Street, LB125
Dallas, TX 75208-3796
(U.S. First Class Mail)

Richard H. Klapper
Penny Shane
Matt West
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10004-2498
(Overnight Delivery)

Sanford F. Remz
HUTCHINS, WHEELER & DITTMAR
101 Federal Street
Boston, MA 02110
(U.S. First Class Mail)

-18-

88106 1

John M. Edgar
BRYAN CAVE, L.L.P.
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64141-6914
(U.S. First Class Mail)

Stephen R. Basser
BARRACK, RODOS & BACINE
Attorneys at Law
Suite 1700
600 West Broadway
San Diego, CA  92101
(U.S. First Class Mail)


Lee L. Cameron, Jr.

-19-

88106 1