IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | |
|---|---|
| ALLAN ZISHKA, et al., on Behalf of Themselves and All Others Similarly Situated, § § § § | |
| Plaintiffs, § § | |
| v. § | CIVIL ACTION NO. 3:98-CV-0660-M |
| § § | |
| AMERICAN PAD & PAPER COMPANY, et al., § § § | |
| Defendants. § | |



## MEMORANDUM OPINION AND ORDER

On September 28, 2001, the Court entered an order dismissing Plaintiffs' claims against all Defendants[1] except Charles G. Hanson III, American Pad & Paper Company's ("Ampad's") Chief Executive Officer and Chairman of its Board of Directors, and Russell M. Gard, Ampad's Chief Operating Officer and member of its Board.[2] Although the Court found that Plaintiffs improperly pleaded their claims against all of the other Defendants, it found that Plaintiffs had properly pleaded the elements required for claims under section 10(b) and 20(a) of the Securities

---

[1]Named Defendants in Plaintiffs' First Amended Complaint, filed on October 30, 2000, included Charles G. Hanson III, Russell M. Gard, Gregory M. Benson, Kevin McAleer, Robert C. Gay, Jonathan S. Lavine, Marc B. Wolpow, and Bain Capital.

[2]The Court entered the September 28, 2001 Order on Defendants' Second Motion to Dismiss, filed on December 14, 2000, which was directed toward Plaintiffs' First Amended Complaint. After Plaintiffs first filed suit in March 1998, Defendants had filed their original Motion to Dismiss, which the Court granted in its Order of September 13, 2000. However, the Court gave Plaintiffs an opportunity to replead their claims in accordance with the specifications provided in the Court's Order. Plaintiffs filed their First Amended Complaint on October 30, 2000, in response to this Order.

-1-

Exchange Act of 1934 and under SEC Rule 10b-5 as to Hanson and Gard. The central premise of the Court's finding was that Plaintiffs had sufficiently alleged scienter as to Hanson and Gard through motive and opportunity pleading.[3]

Contemporaneous with the entry of the Court's September 28, 2001 Order, the Fifth Circuit decided *Nathenson v. Zonagen, Inc.*, 267 F.3d 400 (5th Cir. 2001),[4] and clarified Fifth Circuit law on scienter in section 10(b) Securities Exchange Act cases. In light of this decision, on October 15, 2001, Defendants Gard and Hanson filed a Motion for Reconsideration of the Court's September 28, 2001 Order. In the Motion, Defendants argue that *Nathenson* rejects motive and opportunity pleading as sufficient to constitute the requisite allegations of scienter under the PSLRA and requires the Court to find Plaintiffs have insufficiently pleaded scienter as to both Hanson and Gard.[5] After reviewing Defendants' Motion, along with the Response and Reply thereto, the Court is of the opinion that it should GRANT the Motion for Reconsideration, and amend its Order of September 28, 2001 to dismiss Plaintiffs' allegations against Hanson and

---

[3]Plaintiffs alleged that these Defendants' status as company insiders, along with their sale of 20% of their stock five weeks before Ampad's stock price dropped significantly, showed motive and opportunity, which the Court had previously held is sufficient to constitute the requisite scienter for a 10(b)/10b-5 claim under the Private Securities Litigation Reform Act (PSLRA). *See* Order of September 13, 2000 ("[T]he Court concludes that scienter can be based upon allegations of 'motive and opportunity' as alternative to allegations of 'conscious behavior or severe recklessness,' thereby following the lead of most of the other courts in this district.").

[4]*Nathenson* was released on September 25, 2001.

[5]In their Motion for Reconsideration, Defendants also urge the Court to reconsider its finding that Plaintiffs sufficiently alleged fraud in Ampad's failure to adjust its LIFO reserves in response to rising paper prices in late 1996 and early 1997 and in Ampad's statements regarding the protection its pricing policies provided against rising paper prices. Given its finding that *Nathenson* requires dismissal of Plaintiffs' allegations against Hanson and Gard, the only remaining Defendants in the suit, the Court determines it is not necessary to reach these arguments.

Gard, for the reasons stated below.

*Nathenson* was a class action against Zonagen and its officers, directors, and major shareholders for violations of 10(b) and 20(a) of the 1934 Act and Rule 10b-5. The plaintiffs alleged that, during the class period, the defendants "engaged in a scheme to defraud their shareholders by issuing a series of public misrepresentations about two of Zonagen's potential products in order to inflate artificially the value of Zonagen's stock and sell $67.5 million in stock in July 1997 at an inflated price." *Id.* at 404. The defendants moved to dismiss the claims, arguing, inter alia, that the plaintiffs failed to allege facts sufficient to constitute scienter, an element required for causes of action asserted under 10(b) and 10b-5. *See id.* at 405-12.

In determining whether dismissal was an appropriate remedy in this case, the *Nathenson* court first observed that,

> [i]n order to state a claim under section 10(b) . . . and Rule 10b-5, a plaintiff must allege, in connection with the purchase or sale of securities, "(1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiff's] injury."

*Id.* at 406-07 (quoting *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). It then noted that, under the PSLRA, "a plaintiff alleging a section 10(b)/Rule 10b-5 claim must now plead specific facts giving rise to a 'strong inference' of scienter." *Id.* at 407. The *Nathenson* court continued by explaining that allegations of recklessness serve to satisfy the scienter requirement, with the proper standard for recklessness being "severe recklessness," which "resembles a slightly lesser species of intentional misconduct." *Id.* at 408.[6] It then engaged the question of what "pattern of facts . . . may be pleaded in order to create the 'strong

---

[6] It rejected the Ninth Circuit's holding that "recklessness suffices to meet the substantive scienter requirement *only* if it rises to the level of 'deliberate recklessness.'" *Id.* at 409 (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 975-77 (9th Cir. 1999)).

inference' of either intentional misconduct or severe recklessness." *Id.* at 409. The court explained,

> [b]efore Congress passed the PSLRA, the Second Circuit announced two means by which a plaintiff could plead facts that would create a strong inference of scienter: the plaintiff could either (1) allege facts to show that a defendant had both motive and opportunity to commit fraud, or (2) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

*Id.* (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). The *Nathenson* court found, however, that the passage of the PSLRA rendered motive and opportunity pleading alone insufficient for purposes of alleging scienter. *See id.* at 410. It surveyed various circuits' approaches to the question of whether motive and opportunity pleading is allowed under the PSLRA, finding that

> [t]he most sensible approach appears to us to be the one first generally articulated by the Sixth Circuit in *Comshare* [*In re Comshare Sec. Litig.*, 183 F.3d 542, 548-49 (6th Cir. 1999)]. The *Comshare* Court held that scienter can be alleged by pleading facts giving rise to a strong inference of recklessness or conscious misconduct, but declined to hold that allegations of motive and opportunity, "standing alone," meet the pleading requirement. The Court made the entirely accurate observation that "evidence of a defendant's motive and opportunity to commit securities fraud does not constitute 'scienter' for the purposes of [section 10(b)] or Rule 10b-5 liability." Instead, the Court stated that motive and opportunity could be "relevant" to pleading scienter and "may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct."

*Id.* at 410-11 (citations omitted). Based on the *Comshare* court's approach, the Fifth Circuit concluded that "[w]hat must be alleged is not motive and opportunity as such[,] but particularized facts giving rise to a strong inference of scienter." *Id.* at 412.

Based on these conclusions, the *Nathenson* court held that the plaintiffs' allegations of motive and opportunity were insufficient to constitute scienter as to one of the defendants in the case, an outside director. *See id.* at 420. The court explained,

> [t]he only allegation of officer or director trading is that Blasnik, an outside director,

-4-

> sold 62,000 shares on April 25, 1996, at $9.94 a share and 80,000 shares between January 31, 1997, and February 3, 1997, at prices between $16.03 and $16.25 a share. We agree with the district court that these allegations are insufficient. The total sales amounted to about 18.5% of the shares attributable to Blasnik. As to the April 25, 1996[] sale, it took place more than a month after the stock began its mid-March 1996 several month steady decline, was at a price well below that at the beginning and at the end of the class period, and is less than a third of what the shares were traded for in the July 1997 public offering and less than a fourth of the October 1997 high. As to the sales between January 31, 1997, and February 3, 1997, we note . . . that "they took place long after [certain alleged misstatements were made on November 13, 1996] and long before [others were made on May 27, 1997]."

*Id.* at 420. The court thus characterized the plaintiffs' allegations as follows: "'At most plaintiffs allege that one outside director sold a fraction of his holdings at times that were unrelated to any Company announcements and at prices that were far below that which he could have obtained by selling a few weeks earlier or later.'" *Id.* The Fifth Circuit found that such contentions do not give rise to a strong inference of scienter: "'Insider' trading must be 'unusual' to have meaningful probative value. Sales such as Blasnik's which are 'so inauspiciously timed' do not meet this test. Moreover, '[t]he fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim.'" *Id.* at 420-21.

Defendants argue that the *Nathenson* court's holding that motive and opportunity cannot alone satisfy the scienter requirement, along with its application to Blasnik's circumstances, "compel[] the conclusion that the stock sales" made by Defendants Gard and Hanson "are not probative of scienter." Defendants' Reply to Motion for Reconsideration at 3. Defendants list the following as reasons for this conclusion:

1. In both *Nathenson* and *Zishka*, "the sales occurred when the price was approximately half of its class-period high."
2. In both cases, "the sales occurred at prices far below those" the defendants could have obtained by selling the stock a few weeks earlier.
3. In both cases, "the sales took place weeks *after* the stock price began to decline."
4. In both cases, "the inference of scienter is undercut by the fact that other insiders did not

      sell during the same period."
5. In both cases, the defendants sold only a fraction of their shares--Gard and Hanson sold 20%, while Blasnik sold 18.5%.
6. In both cases, the sales "took place long after dissemination of the allegedly false statements that purportedly animated the sales"–Defendants Hanson and Gard sold "eleven months after allegedly manipulating the LIFO reserves, almost three months after allegedly misrepresenting the pricing policy, two months after making the September 1997 disclosure, and three weeks after disclosing the 3rd Q 1997 results."

The Court finds merit in these contentions by Defendants. Defendants' stock sales, by themselves, appear insufficient to constitute scienter under the higher, "severe recklessness" standard. The trading occurred at a relatively inauspicious time–only two months after the stock price dropped to an all-time low of around $11 per share.[7] Hanson and Gard only sold 20% of their shares, and no other officers or directors sold at any time during the class period. Although this was sufficient to constitute scienter through motive and opportunity pleading, it fails under *Nathenson*'s pleading requirements.

Plaintiffs respond to Defendants' arguments by stating that, even under the standard for scienter articulated in *Nathenson*, the allegations within their Amended Complaint suffice to satisfy the element. The *Nathenson* court defined severe recklessness as encompassing "highly unreasonable omissions or misrepresentations . . . that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware if it." 267 F.3d at 408. Thus, Plaintiffs argue that Defendants' insider trading, coupled with other events, such as the LIFO-reserve accounting irregularities and Defendants' false or misleading statements about pricing policies, give rise to an inference of severe recklessness.

Plaintiffs argue that a separate section within *Nathenson* dictates such a finding. The *Nathenson* court found that plaintiffs had pleaded the requisite scienter with respect to Podolski,

---

      [7]It had been at almost $25 per share immediately prior to the drop.

the CEO of Zonagen, due to certain statements he made that allowed for a strong inference of scienter on his part as to certain misrepresentations made by the company. In its SEC filings and in press releases, Zonagen claimed to have acquired the rights to a patent covering the company's leading product, Vasomax, an oral treatment for male erectile dysfunction. *See id.* at 424-25. In reality, the company did not own a patent covering the product. *See id.* Podolski, the CEO, was quoted in one of the press releases as stating that the approval of the patent was a "crucial event." *Id.* at 425. Additionally, he was quoted in other press releases and in an article that appeared in *Fortune* magazine as conceding that "[y]ou can say today that no patent specifically covers Vasomax," although he claimed that "the company's issued patent 'broadly covers' the drug." *Id.* The court found these statements, along with the facts that Vasomax was basically the only product Zonagen had and it was important to the company whether it owned a patent that covered Vasomax, satisfied the scienter requirement for both Podolski and Zonagen. *See id.* at 425.

Plaintiffs construe this holding as requiring this Court to find that high-level officers such as Gard and Hanson can be presumed to have had knowledge of facts or events critical to a company's business, including knowledge of misstatements made by the company. This Court finds that it should not adopt this interpretation of the case, however. Nowhere does the *Nathenson* court advocate a presumption-of-knowledge doctrine for corporate officers. Instead, the court posits that, "normally[,] an officer's position with a company does *not* suffice to create an inference of scienter." *Id.* at 424 (emphasis added).[8] The *Nathenson* court's finding of

---

[8]The court also noted: "[A]llegations that corporate officers and directors would benefit from enhancing the value of their stock and/or stock options and that the corporation would benefit by receiving more for its shares . . . are . . . insufficient to support a strong inference of scienter." *Id.* at 420.

scienter instead rested in large part on Podolski's own statements about the patent which clearly demonstrated scienter and on the court's recognition of the overarching importance of the Vasomax patent to the continuing viability of Zonagen.

Hanson and Gard did not leave such a smoking gun for Plaintiffs. They are not quoted in *Fortune* magazine as admitting they knew the statements issued by Ampad were untrue. Furthermore, the Court rejected Plaintiffs' presumption-of-knowledge argument in its September 28, 2001 Order, holding that such assertions, which were also made against Defendants Benson and McAleer (former Chief Financial Officers of Ampad) were insufficient, even under the motive and opportunity pleading rules, to constitute scienter. Thus, the Court refuses to read *Nathenson* as requiring the Court to presume that Hanson and Gard had knowledge of fraud simply because of their position as company insiders. Additionally, the Court finds Plaintiffs' allegations of Defendants' stock transactions do not give rise to the requisite scienter under *Nathenson*. Therefore, the Court GRANTS Defendants' Motion for Reconsideration, and hereby amends its September 28, 2001 Order to dismiss Hanson and Gard as Defendants. Because Hanson and Gard were the only remaining Defendants in this case, there are no other matters in controversy between the parties and the Clerk is directed to close the case.

SO ORDERED.

DATED: December 20, 2001.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS